IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 1, 2020

**STATE OF TENNESSEE v. FLOYD ANTONIUS TAYLOR**

**Appeal from the Circuit Court for Tipton County**
No. 9088      Joe H. Walker, III, Judge

———————————————————

**No. W2020-00103-CCA-R3-CD**

———————————————————

Defendant, Floyd Antonius Taylor, was indicted for two counts of delivery of a Schedule II controlled substance of .5 grams or more, with the second count occurring within a drug-free zone.  The counts were severed, and Defendant received a jury trial on Count 2.  The jury found Defendant guilty as charged.  Count 1 was subsequently dismissed.  Defendant received a fifteen-year sentence.  Defendant filed a motion for new trial, which the trial court denied.  Defendant filed a notice of appeal and argues that certain evidence was inadmissible under Tennessee Rule of Evidence 404(b) and that the evidence was insufficient to sustain his convictions.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael R. Working and Janet H. Goode, Memphis, Tennessee, for the appellant, Floyd Antonius Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Background and Procedural History***

On March 6, 2017, the Tipton County Grand Jury indicted Defendant on two counts of delivery of a Schedule II controlled substance of 0.5 grams or more, with the second count allegedly occurring within a drug-free zone. Defendant filed a motion to sever the charges, and the trial court granted the motion. Defendant filed a motion to suppress evidence which was denied by the trial court. Defendant filed a series of motions, including a motion in limine which sought to prohibit the State from introducing prior bad acts.[1] The trial court ruled on the motions on the record.

The trial began on January 10, 2019. After voir dire, but before the trial began, Defendant objected to a portion of a video that the State wanted to play for the jury. The video was the subject of the motion in limine that the trial court ruled on previously. Defendant and the State could not agree as to what portion of the video was to be muted. The trial court held a jury out hearing. The video contained a statement from Defendant in which Defendant proclaimed he "ain't going to do no bad business." Defendant argued that the portion of the video that the State wanted played referred to a prior bad act. The State argued that while the conversation before the statement at issue was about a prior exchange of cocaine with a confidential informant, the statement itself did not allude to a prior bad act but it characterized the nature of the transaction as business. The trial court overruled Defendant's objection. The trial court asked defense counsel to suggest a jury charge to explain the muted section of the video. Defendant then agreed to allow the entire video to be played for the jury as long as the video was not allowed to go back to the jury room. The trial court stated that the video could only be viewed in the courtroom. Defense counsel then stated, "With that being said, . . . we would agree that the whole video be shown with all the conversation." As a consequence, Defendant would not need to submit a special jury instruction. The trial court stated, "If y'all worked it out, that sounds like a solution."

Covington Police Department ("CPD") Officer Tony Doss was assigned to a special crimes unit that investigated narcotics and gang-related activities. Officer Doss routinely used confidential informants ("CI") to conduct drug transactions. The CI, Patrick Daugherty, approached Officer Doss. Mr. Daugherty had been a CI for Officer Doss for a few months. When Officer Doss selected targets, they would generally be someone the CI dealt with in the past.

On August 17, 2016, Officer Doss met with Mr. Daugherty and searched him and his vehicle prior to Mr. Daugherty's meeting with Defendant. There is no video of Officer Doss or Officer Michael Gann searching Mr. Daugherty prior to or after the transaction with Defendant. Officer Doss equipped Mr. Daugherty with two audio/video

---

[1] The transcript from the January 9, 2019 motion hearing is not in the appellate record.

devices.  The two devices allowed for different views of the transaction.  Officer Doss photographed $100 and gave it to Mr. Daugherty to purchase the drugs.  The money would typically purchase one gram of cocaine.  Officer Doss identified photos of Mr. Daugherty's cell phone.  Officer Doss took photos of the text message conversation between Mr. Daugherty and phone number (901) xxx-xxxx that set up the drug transaction.  During the course of his investigation, Officer Doss learned that the phone number belonged to Defendant.  Officer Doss identified Defendant in the courtroom.  Defendant messaged Mr. Daugherty to meet him at the high school track.  Officer Doss and Officer Gann followed Mr. Daugherty to the high school but stayed a couple blocks away to avoid being spotted.  Officer Doss explained that drug transactions often involved weapons so he wanted to avoid being spotted.  Officer Doss admitted that he did not have "100 percent visual accountability" and that was why he used video cameras.  A still photograph from the video surveillance showed the high school just prior to the transaction.  The track was located 110 feet from the high school building.  Once the transaction was complete, Officer Doss again met with Mr. Daugherty.  Officer Doss received the cocaine that Mr. Daugherty purchased from Defendant and placed it in a container.  No body cavity search of Mr. Daugherty occurred.

Officer Doss took the cocaine to the police department, weighed it, tested it, and put it in a sealed evidence bag.  He signed the property sheet and handed the evidence over to Sergeant James Bauges to place in the evidence safe.  Officer Doss identified a pay log that was used to track payments to Mr. Daugherty.  He also identified photographs of the sealed evidence bag that contained the cocaine.  Officer Doss admitted that the date stamp on the video was incorrect but stated that the video was from the August 17, 2016 transaction between Defendant and Mr. Daugherty.  Officer Doss identified several still photographs of Defendant in his car during the transaction.  He also identified photographs of the money and cocaine passing between Defendant and Mr. Daugherty.  Officer Doss was unaware if any help was given to Mr. Daugherty in any cases in which he was charged.  The video of the transaction was played for the jury.

On cross-examination, Officer Doss admitted that it was "not likely" but "possible" that Mr. Daugherty commingled other drugs before handing Officer Doss the bag of cocaine.  He admitted that although he reviewed Mr. Daugherty's cell phone text messages, he would not have seen any messages that Mr. Daugherty deleted.  Officer Doss did not know what Mr. Daugherty did with the $100 he was paid to act as a CI.  Officer Doss admitted that the written investigative report had the incorrect date on it.  Officer Doss stopped using Mr. Daugherty as a CI after he became aware that Mr. Daugherty was charged with criminal activity.

Special Agent Peter Hall, an expert in forensic chemistry, testified that he analyzed the substance sent to the TBI. He analyzed the substance and found it to be .72 grams of cocaine hydrochloride, a Schedule II controlled substance.

Officer Gann testified that he worked with Officer Doss during the controlled buy. It was standard procedure that a CI and his vehicle were searched prior to a controlled buy. Officer Gann did not recall who conducted the search of Mr. Daugherty but believed that Officer Doss performed the search. Officer Gann rode with Officer Doss to support him during the investigation. Officer Gann recognized and identified Defendant. Officer Gann had issued a vehicle registration citation to Defendant on August 10, 2016. During the traffic stop Defendant gave Officer Gann a phone number of (901) xxx-xxxx. Officer Gann testified that the same phone number was used to set up the transaction with Mr. Daugherty. Officer Gann stated that a search of a CI would never be recorded because of safety reasons. Officer Gann identified still photographs from the video that showed the high school. The text messages revealed that Defendant set the location of the transaction at the high school.

Mr. Daugherty testified that he was a drug addict and that cocaine was his drug of choice. In August 2016, he was in the middle of getting a divorce, and he blamed his problems on his drug habit. In 2006, Mr. Daugherty was convicted for theft because he used Tracey Blackwell's (a defense witness) debit or credit card. Mr. Daugherty used drugs in August 2016, and he made contact with the Covington Police Department to become a CI because he was ready to quit using drugs. He normally purchased cocaine from someone he met through a mutual acquaintance. Mr. Daugherty normally spent about $100 for a gram of cocaine. He used the money the police gave him for undercover investigations to buy drugs. Mr. Daugherty and his vehicle were searched before and after each undercover transaction. After each transaction, he gave the drugs to the officers, and he received his payment for helping with the transaction. Mr. Daugherty identified photographs of his cell phone and the text messages it contained. He identified Defendant as the other party to the text messages. Mr. Daugherty stated that it was Defendant who decided to conduct the transaction at the high school track. Mr. Daugherty identified photographs of him and Defendant's conducting the transaction. Mr. Daugherty stated that his relationship with Defendant was "strictly just a dealer and buyer relationship" where Mr. Daugherty provided the funds and Defendant gave him cocaine. He went to Defendant's house to get drugs but "not hang out." He never used or shared drugs with Defendant.

Mr. Daugherty admitted that he stole four guns and sold them to a pawn shop. He was arrested for the theft later in August after the transaction with Defendant. Mr. Daugherty also stole a gun from his father-in-law to support his drug habit. Mr. Daugherty pled guilty to the thefts. He was placed on probation and eventually asked his

probation officer for help to break his drug habit. Mr. Daugherty was placed in a rehabilitation program. He completed his rehabilitation but went back to his drug habit. After Mr. Daugherty completed his probation, he approached his probation officer again and asked for further help. His probation officer again helped place Mr. Daugherty in another program. At the time of trial, Mr. Daugherty was sober for eight months and attended at least three AA or NA meetings per week. On cross-examination, Mr. Daugherty admitted that as a drug addict, he was untrustworthy. He knew that Defendant used drugs but Mr. Daugherty never used them with him.

April O'Neal testified for Defendant. She stated that she was in a relationship with Defendant and that she had a child with him. She recalled that Mr. Daugherty visited their house to "hang out" with Defendant. Ms. O'Neal stated that Defendant, Mr. Daugherty and other friends would get high together and snort cocaine. Ms. O'Neal stated that Mr. Daugherty came by her job at Little Caesar's and messaged her several times on Facebook trying to get in touch with Defendant. On cross-examination, Ms. O'Neal admitted that Mr. Daugherty and Defendant had known one another for less than a year. She could not recall how many times Mr. Daugherty went to her house but "guessed" it was three or four times. When asked if she knew where Defendant was after August 21, 2017, Ms. O'Neal stated that he was "back and forth different places" because "he was on the run." She did not know where he was located. She did see him during that time. Ms. O'Neal did not call the police to let them know where Defendant was.

Lacy Brasfield went to high school with Mr. Daugherty. She described a day on which she at Ms. O'Neal's and Defendant's house and saw Mr. Daugherty sitting on their couch. She stated that he was there for two or three hours. Ms. Brasfield saw Mr. Daugherty at the house at least twice. She did not testify as to when this occurred.

Tracey Blackwell testified that she knew Mr. Daugherty in 2006. He was her neighbor. Ms. Blackwell stated that Mr. Daugherty stole her credit card. She went to confront Mr. Daugherty but he did not answer his door. The next day, Mr. Daugherty came to her house and confessed that he stole the credit card. Ms. Blackwell's landlord heard the conversation and told Mr. Daugherty that he had to move because he also stole his own mother's rent money. Ms. Blackwell worked for the landlord and had Mr. Daugherty's mother's rent money in a lockbox in her closet. Ms. Blackwell stated that she "was on a massive amount of pain medication at that time," and "somehow [Mr. Daugherty] stole the rent money and my medication and my credit cards." Ms. Blackwell filed a police report. She had not seen Mr. Daugherty since 2006. On cross-examination, Ms. Blackwell admitted that she previously had theft and fraud charges against her. She was also convicted of statutory rape and shoplifting.

Jeremy Taylor, Defendant's brother, testified that he did not use drugs but was at Defendant's house when Mr. Daugherty was there with Defendant and others in 2015 or 2016. Mr. Taylor saw "drugs all laid out right there." He saw no exchange of drugs for money. Mr. Taylor did not like that Defendant used drugs and wanted Defendant to go to rehab. On cross-examination, Mr. Taylor stated that he saw Mr. Daugherty at Defendant's house twice. Mr. Taylor did not recall Defendant's phone number. Mr. Taylor identified Defendant in a still photograph from the surveillance video of the transaction. Defendant did not testify.

After deliberations, the jury found Defendant guilty as charged. The trial court sentenced Defendant to fifteen years' incarceration and dismissed Count 1. Defendant filed a motion for new trial, and the trial court denied the motion.[2] It is from the denial of that motion that Defendant now appeals.

## *Analysis*

Defendant argues that the trial court erred by allowing evidence of prior bad acts to be admitted at trial and by allowing a witness to reference the fact that Defendant absconded from a prior trial date. Defendant also argues that the evidence is insufficient to support his conviction. The State first argues that the notice of appeal was not timely filed. The State further argues that Defendant is not entitled to relief on his two claims that evidence was inadmissible under Tennessee Rule of Evidence 404(b). The State also argues that evidence is sufficient to sustain Defendant's conviction. We agree with the State.

## *I. Notice of Appeal*

Under Tennessee Rule of Appellate Procedure 4(a) the notice of appeal must be filed in the appellate court "within 30 days after the date of entry of the judgment appealed from." However, Rule 4(a) also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *Id.*

According to this Court's record on appeal, it appears that the trial court's order denying Defendant's motion for new trial was filed on December 9, 2019. Defendant's notice of appeal was filed on January 17, 2020, well past the 30 day deadline. Defendant claims in his brief that the trial court's order was filed on December 16, 2019. Even if we were to use that date, Defendant's notice of appeal was untimely filed. However, we choose to waive the timely filing of the notice of appeal in the interest of justice.

---

[2] The transcript from the motion for new trial hearing is not in the appellate record.

- 6 -

## II. 404(b) Issues

Defendant argues that the trial court erred by allowing two instances of prior bad acts to be admitted at trial in violation of Tennessee Rule of Evidence 404(b). The State argues that Defendant is not entitled to relief. We agree with the State.

In our review of the record, we must note that the absence of the January 9, 2019 motion in limine hearing transcript and the absence of the motion for new trial transcript from the appellate record preclude our review of the trial court's decision. *See* Tenn. R. App. P. 24(b) (noting that the appellant has the duty to have prepared those parts of the proceedings which are "necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"); *see also State v. Troutman*, 979 S.W.2d 271 (Tenn. 1998) (holding that failure to include trial transcript on appeal waived challenge to sentence); *State v. Ballard*, 855 S.W.2d 557 (1993) (holding failure to include transcript precludes appellate review); *State v. Oody*, 823 S.W.2d 554 (Tenn. Crim. App. 1991) (holding trial court's ruling presumed correct in absence of an adequate record on appeal). Without the transcripts, we must presume that the trial court was correct.

## III. Sufficiency of Evidence

Defendant argues that the evidence is insufficient to support the guilty verdict. Specifically, Defendant argues that the State failed to establish that the cocaine recovered from the CI was sold by Defendant. Defendant further argues that the video equipment was faulty and that officers did not have "100 percent visual accountability" of the transaction. The State argues that Defendant's conviction is sufficiently supported by the evidence. We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v.*

*Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-408(4) classifies cocaine as a Schedule II controlled substance. It is an offense for a defendant to knowingly deliver a controlled substance. T.C.A. § 39-17-417(a)(2). If the amount of cocaine involved is .5 grams or greater the offense is a Class B felony. *Id*. § 39-17-417(c)(1). "Delivery" is defined as the actual, constructive, or attempted transfer of a controlled substance from one person to another. *Id*. § 39-17-402(6). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id*. § 39-11-302(b). Intent to deliver may be inferred "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419. When a person delivers a Schedule II controlled substance "on the grounds or facilities of any school" . . . [the person] shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)-(i) for such violation." *Id.* § 39-17-432(b)(1).[3]

Here, there is ample evidence that Defendant delivered cocaine to Mr. Daugherty. Officers Doss and Gann searched Mr. Daugherty and his car before equipping him with two video cameras. Mr. Daugherty clearly engaged in a text message exchange with Defendant. The phone number involved was the same phone number that Defendant gave to Office Gann during a previous traffic stop. Defendant set the place for the meeting at the high school track. The only fault in the video equipment was the date stamp which Officer Doss explained was incorrect during his testimony. The video shows Mr. Daugherty arriving at the school. Officer Doss explained the track where the exchange took place was approximately 110 feet from the school building. The video shows the parking lot of the track and the ball field press box and bleachers, which are clearly facilities of the school. Defendant refers to the high school track in his text message to Mr. Daugherty. The video and still photographs show the Defendant in his

---

[3] We note that Tennessee Code Annotated Section 39-17-432 was amended effective September 1, 2020, but this case was tried and Defendant was sentenced before the amendment went into effect.

vehicle. The video shows the hand-to-hand exchange of money for what appears to be cocaine. Mr. Daugherty testified that he purchased the cocaine from Defendant. The TBI report and Agent Hall's testimony showed that the substance was cocaine, a Schedule II controlled substance, that weighed .72 grams. When reviewing the evidence in the light most favorable to the State, we conclude that a rational juror could have found beyond a reasonable doubt that Defendant delivered .72 grams of cocaine to Mr. Daugherty in a drug-free zone. Defendant is not entitled to relief.

### *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____

TIMOTHY L. EASTER, JUDGE